UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LATASHA GATLIN,

        Plaintiff,

        v.         Case No. 18-C-1871

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.

## DECISION AND ORDER REVERSING THE COMMISSIONER'S DECISION

Plaintiff Latasha Gatlin filed this action for judicial review of a decision by the Commissioner of Social Security denying her application for supplemental security income under Title XVI of the Social Security Act. Gatlin contends that the decision of the administrative law judge (ALJ) is flawed and requires remand because the ALJ improperly assigned little weight to the opinions of Gatlin's treating mental health providers, did not account for Dr. Ertl's opinions in the residual functional capacity (RFC) assessment, and found that Gatlin's statements are not entirely consistent with the record. For the reasons that follow, the decision of the Commissioner will be reversed and remanded for further proceedings.

## BACKGROUND

Gatlin filed an application for supplemental security income on April 6, 2015. She listed schizophrenia, bipolar disorder, post-traumatic stress disorder (PTSD), and attention deficit hyperactivity disorder (ADHD) as the conditions that limited her ability to work. R. 226. After her application was denied initially and on reconsideration, Gatlin requested a hearing before an

ALJ.  On July 26, 2017, ALJ Guila Parker conducted a hearing where Gatlin, who was represented by counsel, and a vocational expert (VE) testified.  R. 32–64.

At the time of the hearing, Gatlin was 35 years old.  She testified that she had received SSI beginning in 2001 until a period of incarceration beginning in 2013.  Gatlin had submitted her application for SSI while she was incarcerated, alleging an onset date of April 6, 2015, and was subsequently released in July 2015.  R. 36–37.  She lived with her foster mother and her foster mother's adult nephew.  R. 39.  Gatlin completed the eighth grade.  Although she tried to get a GED while incarcerated, she did not pass the test.  R. 38.  She did not have any work history in the last fifteen years.  R. 39.

Gatlin testified that she has difficulty with her short-term memory and that she cannot remember things.  R. 40.  Gatlin also indicated that she has difficulty keeping concentration and attention.  R. 41.  She stated that she probably could not watch a 30-minute sitcom on television from start to finish.  *Id.*  Gatlin testified that she has anger problems that affect her relationships with other people.  R. 42.  She stated that her anger is not triggered by anything; simply her existence makes her angry.  R. 43.  Gatlin reported having difficulty getting along with her foster mother and her nephew.  R. 44.  She also has crying spells as a result of her anger.  R. 52.  She stated that she makes quick meals that are already cooked and helps with chores around the house.  R. 46.

Gatlin reported sleeping five hours each night, but those hours are usually broken up by nightmares. R. 47. She takes medication for the nightmares, which helps a little bit. R. 48. The medication caused her to be occasionally nauseous and drowsy.  Gatlin also took anti-psychotic and anti-depressant medication to suppress the voices Gatlin hears.  Gatlin testified that the voices are under control but are still there.  *Id.*  She attends therapy twice a month.  R. 49.

2

In an eleven-page decision dated December 28, 2017, the ALJ determined that Gatlin is not disabled. R. 15–25. The ALJ's decision followed the five-step sequential evaluation process for determining disability prescribed by the Social Security Administration (SSA). At step one, the ALJ found that Gatlin has not engaged in substantial gainful activity since April 6, 2015, the application date. R. 17. At step two, the ALJ concluded Gatlin has the following severe impairments: Major Depressive Disorder, Post-Traumatic Stress Disorder, and Schizoaffective Disorder. *Id.* At step three, the ALJ found that Gatlin did not have an impairment or combination of impairments that met or medically equaled the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 17–19.

The ALJ next assessed Gatlin's residual functional capacity (RFC) and found that Gatlin could perform a full range of work at all exertional levels but with additional non-exertional limitations:

> The claimant is able to understand, remember, and carry out simple instructions. The claimant is limited to work in a low stress job, defined as one that requires only occasional work-related decisions and involves only occasional changes in the work setting. The claimant should not be required to perform at a production rate pace. This claimant is occasionally able to interact with supervisors and co-workers, but should never be required to perform tandem tasks that require coordination with co-workers. The claimant is able to work in proximity to the public, but should have only brief and superficial interaction with the public. Over the course of the first 30 days of employment, the claimant would require close supervision, defined as having a supervisor check the claimant's work and repeat instructions if needed, approximately 2 times during an 8-hour shift.

R. 19. At step four, the ALJ concluded there are jobs that exist in significant numbers in the national economy that Gatlin can perform, including floor worker, cleaner II, and salvage laborer. R. 24. Accordingly, the ALJ found that Gatlin is not disabled. R. 25. The Appeals Council denied Gatlin's request for review, making the ALJ's decision the final decision of the Commissioner.

## LEGAL STANDARD

Judicial review of the decisions of administrative agencies is intended to be deferential. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The Social Security Act specifies that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Given this standard, and because a reviewing court may not substitute its judgment for that of the ALJ, "challenges to the sufficiency of the evidence rarely succeed." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

Gatlin raises several challenges to the ALJ's decision, but the court finds only one need be addressed since it is enough by itself to require a remand. Gatlin asserts that the ALJ improperly evaluated the opinions of Dr. Jackson, her treating psychiatrist, and Mr. Seely, her therapist. Generally, the ALJ must give "controlling weight" to the medical opinion of a treating physician

on the nature and severity of an impairment if it is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with other substantial evidence." *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010); 20 C.F.R. § 416.927(c)(2); SSR 96-2p. If the ALJ decides to give lesser weight to a treating physician's opinion, he must articulate "good reasons" for doing so. *Larson*, 615 F.3d at 749. Stated differently, although an ALJ is not required to give the treating physician's opinion controlling weight, she is still required to provide a "sound explanation for his decision to reject it." *Roddy*, 705 F.3d at 636 (citations omitted). "If the ALJ does not give the treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

The regulations in effect at the time Gatlin filed her claim separated medical evidence into two categories: "acceptable medical sources" and "other sources." Acceptable medical sources are limited to licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a), while other sources include medical sources, such as nurse practitioners, social workers, and therapists, as well as non-medical sources, such as educational personnel and relatives. 20 C.F.R. § 404.1513(d). Although only "acceptable medical sources" can give medical opinions and be considered treating sources, an ALJ may rely on opinions from other medical sources to determine the severity of the claimant's impairments and the extent of any limitation on the claimant's ability to work. *Id.* In deciding how much weight to give these "other sources," an ALJ can apply the same kinds of factors that are used to evaluate acceptable medical sources. SSR 06-03p. SSR 06-03p states that "the adjudicator generally should explain the weight given to opinions for these

5

'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent review to follow the adjudicator's reasoning, when such opinions my have an effect on the outcome of the case." *Id.*

Dr. Jackson and Mr. Seely completed mental source statements on July 14, 2016. They opined that Gatlin would need to lie down three or more hours per day due to fatigue, have difficulty interacting or working in proximity to others in a workplace setting due to verbal outbursts, withdraw from work tasks, and have physical outbursts, with these difficulties occurring several or more times a week and likely result in Gatlin being distracted by coworkers and responding inappropriately to instruction/criticism from supervisors. Dr. Jackson and Mr. Seely further opined that Gatlin was likely to be absent an average of more than four days per month, need unscheduled breaks, be off task more than 20% of the time, off pace less than 50%, unable to perform work that involved detailed work, and unable to complete even simple work tasks without an unusual level of extra supervision on average three or more times a day. They opined that Gatlin had marked limitations in her activities of daily living, social functioning, and pace, persistence, or concentration. R. 455–66.

The ALJ gave little weight to these opinions, finding that they are "wholly inconsistent with other mental status findings over time, including those showing the claimant able to attend appointments, keep up with medications, perform some activities of daily living including shopping, and act in a socially appropriate manner." R. 23. She also observed that no rationale was provided in the treatment records for time off task, unscheduled breaks, or absenteeism. The ALJ noted the inconsistencies between the limitations described in the forms completed by Dr. Jackson and Mr. Seely and the mental status findings from February 9, 2016, which referenced Gatlin's allegations of suspiciousness and hallucinations, as well as observations of full

orientation, normal affect, good hygiene, no memory/attention/concentration problems, calm/pleasant mood, adequate impulse control, sound insight, normal speech, and sound judgment and denial of suicidal/homicidal ideation and self-abusive or violent behaviors. She noted that a medical source described Gatlin as a "nice lady." R. 23 (citing R. 512). The ALJ also noted that the forms did not address the impact of intermittent noncompliance or the observations in medication management notes from May 16, 2016 (two months after medication was started) through April 11, 2017, which documented improvement/stability with no evidence of medication abuse, side-effects, psychotic process, cycles, or suicidal ideation. *Id.*

Gatlin asserts that the ALJ improperly concluded that the opinions of Dr. Jackson and Mr. Seely were inconsistent with the medical record. The court agrees. Although the ALJ indicated that the opinions were not consistent with the overall evidence of record, she did not discuss evidence from the medical record that are not supportive of her assessments. *See Taylor v. Colvin*, 829 F.3d 799, 802 (7th Cir. 2016) ("An administrative law judge 'must confront the evidence that does not support her conclusion and explain why that evidence was rejected.'" (quoting *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014)). For instance, the treatment notes of Dr. Jackson and Mr. Seely support evidence of Gatlin's paranoid thinking, isolation, paranoia, fatigue, auditory and visual hallucinations, flashbacks, and panic attacks through April 2017. While these assessments may be based on Gatlin's subjective reports, under the law of this circuit, it is not improper for a treating psychologist or therapist to rely on a claimant's description of her symptoms in assessing the claimant's mental impairments and limitations. *See, e.g.*, *Adaire v. Colvin*, 778 F.3d 685, 688 (7th Cir. 2015); *Price v. Colvin*, 796 F.3d 836, 840 (7th Cir. 2015). "A psychiatrist does not merely transcribe a patient's subjective statements. Mental-health assessments normally are based on what the patient says, but only after the doctor assesses those complaints through the objective

7

lens of her professional expertise." *Mischler v. Berryhill*, 766 F. App'x 369, 375 (7th Cir. 2019) (citing *Price*, 794 F.3d at 840). The ALJ's failure to discuss relevant contrary evidence warrants remand in this case.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner is **REVERSED** and **REMANDED** to the Agency pursuant to 42 U.S.C. § 405(g) (sentence four). The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 29th day of April, 2020.

s/ William C. Griesbach<br>
William C. Griesbach, District Judge<br>
United States District Court